Good morning, Your Honors. I'm here on behalf of Plaintiff Appellant Charles Hamner. May it please the Court. The question before this Court is a narrow one. Did Mr. Hamner, whom the ADC diagnosed as seriously mentally ill, plead the elements of a procedural due process, conditions of confinement, or an adequate medical care claim? If he did, then he is entitled to remand for fact development so that he can try to prove his particular solitary confinement was unconstitutional. For now, though, we are concerned only with whether he adequately alleged plausible claims. Particularly in light of the generous construction that this Court affords pro se plaintiffs, the answer plainly is that Mr. Hamner satisfied his pleading burden and is entitled to fact development. To plead, not prove, a conditions of confinement claim, Mr. Hamner was required to allege that prison officials subjected him to a substantial risk of serious harm when they consigned him to solitary confinement for seven months, notwithstanding the ADC's serious mental illness diagnosis. And two, that they turned a blind eye to that risk, in fact to the reality that his mental illness became worse in solitary. Mr. Hamner more than satisfied his pleading burden. As a consequence, he is entitled to try to prove that claim. Regarding the first prong, Mr. Hamner alleged that the ADC diagnosed him with bipolar disorder, post-traumatic stress disorder, and chronic for 23 or 24 hours a day for nearly seven months, where he was for all intents and purposes deprived of human contact and sensory and all productive stimuli. He alleged that social isolation and sensory deprivation are dangerous, generally, but particularly in light of the diagnosis of serious mental illness. More than that, Mr. Hamner alleged that he didn't just risk harm, rather he experienced actual harm. His well-controlled borderline personality disorder, PTSD, and depression worsened as a consequence of the restrictive environment he endured. Specifically, he experienced hallucinations, insomnia, worsening depression, panic attacks, and anxiety, all common effects of prolonged solitary confinement. He alleged that he could not get prescribed psychiatric and psychological counseling in light of the restrictions imposed. And Mr. Hamner was absolutely correct. As federal courts have held, research has established, correctional associations have argued, ADC regulations reflect, solitary confinement is dangerous for those who suffer from serious mental illness. And Mr. Hamner pleaded with his isolation. He alleged, for example, that prison officials knew that he was mentally ill. He alleged that prison officials knew that placing him in solitary confinement was risky as a consequence of his mental illness. He alleged that prison officials knew that solitary confinement was making his mental illness worse. And he alleged that prison personnel knew that solitary interfered with his prescribed psychiatric medication and was at risk of harm. So is the legal rule you're suggesting that a person with mental illness may not be placed in solitary confinement? No, Your Honor. I'm not suggesting a per se rule here. I'm merely suggesting that Mr. Hamner, in light of his serious mental illness, adequately stated a claim and deserves to develop the facts and try to prove the claim. The defendants were deliberately indifferent. This is not a per se case. Well, what would be the difference between this man and anybody else with mental illness who's placed in solitary confinement? Well, first, Your Honor, Mr. Hamner alleged that his particular solitary confinement impeded the delivery of psychiatric medication and psychological counseling, which I think distinguishes it from the run-of-the-mine solitary confinement with a mentally ill person case. That is that the conditions he endured interfered with prescribed medication. Mr. Hamner, in contrast with many other prisoners, also alleged with specificity that his mental illness became disabling while he was in solitary confinement. He experienced very serious decompensation as a result of solitary confinement. Well, how was that manifested to the prison officials? He told prison officials that he was not getting needed psychiatric medicine and psychological counseling in classification meetings. He alleged that in every classification hearing, his mental health was discussed, and the fact that he was not adequately getting psychiatric medication was raised by him. Did he raise the fact that he was having hallucinations? We do not know at this point. We know that he alleged that defendants were specifically aware of the particular effects of solitary confinement on him specifically, but there is no fact development yet, so we don't have records to show one way or another what he specifically told them. He alleged, though, that he informed them that his mental health was deteriorating. What's more- So you're saying that the law requires them to administer the medications to him? Is that the gist of your claim, or is your claim he couldn't be placed in confinement at all? No, my claim is that Mr. Hamner adequately alleged that solitary confinement, by virtue of his particular mental illness, the restrictions he endured, stated a claim under the 8th Amendment because A, the restrictions he endured were crushing, and B, because he was not able to get adequate psychiatric or psychological care in solitary confinement, but that's not a per se statement. No, I'm trying to understand what you think they were supposed to do. If they gave him the medicine, would that have resolved any 8th Amendment problem? No, Your Honor. If he decompensated in solitary confinement, even if they had provided him with medication, they still would have been under an obligation to provide him with an alternate housing assignment because otherwise they would be turning a blind eye to the fact that the conditions to which they subjected him were causing him grave psychological harm. The risk of harm that they subjected him to was obvious. Humans are obviously social creatures. Our brains are literally wired for social contact and diverse stimuli. And assuming that any human would be unaware that solitary confinement was likely to injure an already experiencing and renewing solitary confinement, as all defendants were, could miss the correctional association positions, the case law, the scientific research, the overhauling of DOCs nationally to remove the seriously mentally ill from solitary confinement. Each of these sources has been shouting with one voice, solitary is devastating to people with serious mental illness. Notwithstanding the fact that he told prison officials that solitary makes seriously mentally ill people sick, defendants did nothing. Indeed, defendants' own regulations and classification paperwork reflect this knowledge. Was this a damages claim or was there an injunctive relief? It was both, Your Honor, but Mr. Hamner was ultimately released from solitary confinement and so a damages claim remains. What about qualified immunity? Qualified immunity was not briefed by defendants below, nor was it briefed before this court. It typically requires a well-developed factual record to determine. On the allegations that Mr. Hamner pleaded, defendants would not be entitled to qualified immunity, but it certainly remains the case that on remand they could assert that defense, marshal evidence that the facts are not, as Mr. Hamner alleged, and prevail on qualified immunity, but I think it is premature to consider that at this time. Why is it premature if we take the facts as alleged by Hamner and see whether they allege the violation of a clearly established right? Isn't that mature, that question? Your Honor, two answers. Number one, you could, of course, examine qualified immunity on the facts alleged, and on the facts alleged, defendants would not be entitled to qualified immunity. He pleaded clear and quintessential procedural due process in conditions of confinement claims that courts have held time and again state a claim. It's hard to imagine that defendants could sufficiently assert that they were not on notice, that placing a seriously mentally ill prisoner in solitary confinement for seven months under conditions where he could not get psychiatric care or psychological counseling does not violate the Eighth or Fourteenth Amendment. When you say courts have held so time and again, what's your best due process case? The district court, of course, relied on Orr and Phillips, I think, and the Mr. X case, all of which ruled against plaintiffs who had been held in solitary confinement on the grounds that it was not sufficiently atypical. Correct. What's the best case that would come out the other way that would show that these alleged facts do clearly, you know, do violate a clearly established rule about what's atypical? Sure. Sure, Your Honor. Starting with the Eighth Circuit in Port Lille v. Brill in 2002, this court held that the atypical and significant hardship is a question of fact that may require a fuller record than the initial complaint. In 2000... I understand that. I'm at a case that certain facts, the solitary confinement combined with other things, is there any good authority on that? Sure there is. If we want to turn to the Second Circuit in 2006, Wheeler v. Butler, the case holds that 86 days in solitary for a prisoner with a hearing aid states a claim. The rule is that relatively short stints, if the conditions are particularly restrictive or impactful on individual prisoners, amount to an atypical and significant hardship. In continuing with the Second Circuit in Davis v. Barrett in 2009, the court held that 55 days state a claim. In Latson v. Clark, the Western District of Virginia held that seven months states a claim for a prisoner who suffers from mental illness. In 2015, Judge Posner in the Seventh Circuit wrote, six months is not an apt presumptive minimum for establishing a violation. Judges who lean towards such a presumption may be unfamiliar with the nature of modern prison segregation and the psychological damage that it conflict. All of these cases stand for the proposition that defendants would not be entitled to believe that when faced with a mentally ill prisoner, they could consign him to solitary confinement without adequate process because these cases stand for the proposition that you must engage in a multi-factor, fact-specific analysis of the conditions the particular prisoner endured, the effect on the particular prisoner, and the liberty he enjoyed prior to being placed in solitary confinement, whether that's general population or another restrictive housing unit. Here, Mr. Hamner alleged that his particular experience of his prison life, his particular prison life, he also alleged that his particular solitary confinement was more restrictive than solitary confinement elsewhere in the Arkansas Department of Corrections. I see that I'm well into my rebuttal time and I'd like to reserve if I may. Very well, you may. Mr. France, we'll hear from you on behalf of the Napolese. May it please the Court, Your Honor, Vincent France, Assistant Attorney General for the State of Arkansas. I'd like to address a few points that were raised. The documents regarding Mr. Hamner's, the harm about hallucinations that he has claimed and that the defendants had knowledge, those allegations are in his objections to the magistrate's recommendations, which are post-pleading documents in the district court level. Mr. Hamner was given the opportunity to amend his complaint. Don't we have some cases that say, don't we have some cases that say that you treat the objections as... As motions to amend. Yeah, right, when you have a pro se person. Your Honor, what makes those cases unique is that those cases are pre-service cases before the court is, while the court's screening the case. And this situation's different because his objections, especially the second set, occur over a year after this court had already screened the case and service had already occurred. And unlike those cases where the plaintiff and the inmate wasn't given an opportunity to amend his complaint, Hamner was given an opportunity to amend his complaint. And even in his amended complaint, he doesn't actually raise these allegations. So you think your position is the hallucination business is not properly pleaded? Is that your point? That is part of our argument. Yes, Your Honor. The point you're making now. Yes, Your Honor. What about the medications? Is that properly pleaded? No, Your Honor. It's not properly pleaded as regards to these defendants. These defendants were not medical professionals. These defendants were not the ones who were required to actually take the medication from where it's housed at the prison to him in the prison. He pleaded that the solitary confinement resulted in him not receiving his medication. Is that right? That's what he alleges. Yes, Your Honor. You're saying these defendants had no responsibility for that? That's correct, Your Honor. Why not? Because this court has stated that general responsibility is not sufficient for personal involvement in Keeper v. King. On what? What do you mean? They weren't personally responsible for not getting Mr. Hamner his medication. Who are these defendants? Is this the head of the facility? One is the warden, Danny Burroughs. Connie Jenkins was a classification officer. Maurice Williams was part of the classification committee. Outlaw was a deputy warden. Mr. Evans was part of the administration of the Arkansas Department of Corrections at the time. But they were responsible for keeping him in segregation, weren't they? They were responsible. His argument is that it's in segregation where I was unable to get my medication and counseling. Isn't that enough of a link rather than the person who actually physically delivers the medication? Well, Your Honor, no. Because no court has ever ruled that just because you have a mental illness prevents an inmate from going into administrative segregation. In addition... Well isn't the allegation here that you put me in administrative segregation, you never told me the reason why I was there, you never held a hearing, and I never received the medical care that I should have, and therefore my condition decompensated, and you're liable? And isn't the warden ultimately responsible? And this is pro se pleading. Your Honor, respectfully, some of those facts were clarified by the counsel's 28-J letter that he filed this weekend. Mr. Hamner received at least seven hearings during his time in administrative segregation. In April of 2015, he received at least two notifications telling him why he was in administrative segregation. One was because he was under investigation and the second one was for security concerns. And so we did inform him as to why he was in administrative segregation. What about whether this was atypical to trigger a liberty interest in the first place, though? That's where I think the deprivation of medication and counseling is relevant. Whether it's sufficient, I don't know, but you say that these defendants are not responsible for whether he was unable to get his medication and counseling? I'm following up on what Judge Grunder said. They're the ones who put him in there, and isn't the allegation that it's the fact that he's in there that keeps him from getting the medication and counseling? People in . . . just because you're placed in administrative segregation doesn't mean that the procedures aren't in place for you to get your medication. We couldn't put someone in administrative segregation without giving them his insulin. He alleges that he put them on notice of that. You might be able to prove that he didn't tell them he needed meds or that they did give him his meds, but he alleges that these defendants put him in segregation and prevented him from getting those things, as I understand it. Is that right? But he hadn't shown that these defendants, besides putting him in segregation, did anything else to be personally responsible. In addition, at the segregation . . . Is that an appropriate pleading standard to hold a pro se litigant to, particularly a mentally ill one? Your Honor, respectfully, he was able to execute his district court case fairly well on his own and was able to . . . knew when to file objections. Well, he must not have done it very well, since the argument is he didn't name the right people. Well, Your Honor, just because he didn't name the right people doesn't mean he had some mental deficiencies that would prevent him from pleading appropriately. In addition, Your Honor . . . Well, do we have any cases that say the court can add defendants that weren't sued because the plaintiff sued the wrong people? Your Honor, I know in practice, oftentimes district courts are very liberal, as this court has instructed them to, as much as they can from that side of the bench, assist these pro se inmates. Yes. So you're saying that these defendants weren't personally responsible for preventing the medication in counseling? That is correct, Your Honor. But does he allege that they were? He does not allege that they were personally responsible. How do you know they weren't responsible, or how would we know that? Because these individuals are not part of the medical staff. These individuals . . . But they could have said to the medical staff, you can't go in there, he's in segregation. There's no allegation that they somehow prevented him, or Mr. Hammer never alleged that the defendants named in this case made any action to prevent him from getting his medication beyond just simply placing him in administrative segregation. There's nothing that prevents the proper protocol from an inmate in administrative segregation from getting his medication. I'd also like to point out . . . How do we know that? How do we know there's not a prison rule that says anybody who's in administrative segregation gets no meds? If that be the case, he was required to plead it. In addition, these defendants are issued in their individual capacity, so really the issue of policy is not before us. I'd also like to point out that at these seven administrative hearings regarding his segregation, there were mental health professionals present. The defendants named in this case are none of those, and they were allowed to rely upon the advice of those mental health professionals. That's why we had the mental health professionals at this. So if there was some apparent, from a mental health standpoint, that some harm was occurring, that they would have spoken up and said, this guy does not need to be in administrative segregation. But now you're well past a pleadings case now, though, aren't you? I mean, you're talking about the underlying evidence. I think that puts us in summary judgment land. Your Honor, but in this record, there is a discussion by Mr. Hamner that there were medical mental health professionals there. And so if we're going to look at everything in this case, then this court can also consider the facts that a mental health professional was present, because in fact, the pages in the record where he talks about or alleges that some of his mental health problems, it's where he discusses that the mental health professional was there. Regarding his due process claim, he doesn't show how his case is unique. This case is very akin to Orr v. Larkins, where this court said that simply claiming a mental illness is not enough of a plus factor above segregation itself to entitle an inmate to due process. In that case, Orr claimed that he should not have been placed in administrative segregation because of his mental illness. And in following the decision of that court, we would ask that this court also find that a mental health issue is not enough of a plus factor to provide a situation that the prison life was atypical. Again, even if this court were to find that it was atypical, there's no case that says that being in segregation, or excuse me, he received seven hearings in seven months. In Larkins v. Austin, 2005 U.S. Supreme Court found that an inmate housed in the SuperMAX unit who was once assigned to segregation has to have a hearing within 30 days and then an annual review. Am I mistaken? I thought he pled that he didn't get these hearings. Your Honor, in fact, again, the 28J letter does reference that he did get hearings on April 4, 2015, April 8, 2015, and the exhibits that are attached to his original complaint, which this court can also consider, shows that he got seven hearings, three in May, two in June, one in August, in which he also received hearings. I think it's also important to note in that 28J letter to this court that his attorneys recognized that he was also given notice as to why he was in segregation as early as April 2015, so that for these hearings in May and June, that he was able to present a defense against that. I think that's important to also recognize. You mean so even though the district judge dismissed the case based on the lack of a liberty interest, you're suggesting it could be affirmed on a different ground? Yes, Your Honor. That even assuming there was a liberty interest deprived, his allegations show that he got adequate process? Absolutely, yes, Your Honor. Returning just briefly back to the conditions of a confinement claim, as this court is well aware, you have to prove deliberate indifference. Hamner did not allege sufficient facts to show, as I mentioned earlier, that the defendants were personally involved to the point of criminal recklessness is the standard that the courts have defined sufficient for deliberate indifference. Mr. Hamner has not sufficiently alleged that. Your Honor, we would ask that y'all affirm the dismissal by the district court, and if no further questions, I will yield the rest of my time. All right, very well, Mr. France, Mr. Greenfield, we'll hear from you in rebuttal. Your Honors, a few quick points. Regarding the harmless error question, defendants provided shifting substance-free rationales that deprived him of any meaningful opportunity to contest the basis of his solitary confinement. Regarding Orr, Orr and this case are actually quite different. The plaintiff in Orr, as even appellate counsel conceded before this court, did not describe the conditions of his solitary confinement in any way. He did not plead that prison officials interfered with the provision of his medication. This is a completely different case. Here, Mr. Hamner pleaded with specificity that his solitary confinement was unusual, was different from the run-of-the-mill solitary confinement in light of the restrictions he endured, the medication he was deprived, the mental illness he suffered, and that was a I'd like to... What about... Oh, go ahead. No, no, you go ahead, Judge. What about the process that he was given? Yeah, I categorically reject that on the face of these pleadings, it's possible to determine that Mr. Hamner received adequate process. He does not concede, nor does the 28J letter go to process. He says instead that he was deprived of a meaningful opportunity to contest the basis for a solitary confinement because he never knew why he was in solitary confinement. At first he was told it was pending investigation, then he said it was security concerns, then they said it was because he wanted to be in solitary confinement, then they said because there was an Aryan nation hit on him. None of these explanations afforded him a meaningful opportunity to respond, and he also alleged that he was prevented from attending many of the hearings. That... All right. What did you mean by harmless error point when you started out your rebuttal? What's the harmless error issue? I'm sorry, Your Honor. I thought you were asking whether, if the court were to determine he did in fact get adequate process, whether the liberty interest question would fall away. Just an alternative basis to affirm is, I think, the point, not that the error was harmless. Correct. Because the due process claim has two elements. Correct. If you didn't plead the second element, you would lose even if you did plead the first element. That's not harmless error, that's just an alternative ground. Correct. But he did plead that he did not get adequate process. He pleaded that he was deprived of the hallmarks of due process at every turn. Thank you, Your Honors. Thank you to both counsel. The case is submitted and the court will file an opinion in due course. Counsel...